UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA        :
         :
v.                         :      **OPINION AND ORDER**
         :
IYIBIA BROWN,          :      18 CR 190 (VB)
               Defendant.     :
------------------------------------------------------------x

Briccetti, J.:

After a five-day trial that commenced on February 25, 2019, and concluded on March 1, 2019, defendant Iyibia Brown was found guilty by a jury of conspiring to commit bank robbery in violation of 18 U.S.C. § 371, and bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2, in connection with the armed robbery of a KeyBank branch on South Little Tor Road in New City, New York, on February 9, 2018.

Before the Court is Brown's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Docs. ##81, 82). Brown argues she was deprived of the opportunity to present expert testimony on the voluntariness of her post-arrest statements at a pre-trial hearing, which "undercut her ability to challenge fully and effectively the government's use of her statement to impeach her at trial." (Brown Br. at 11).

For the following reasons, the motion is DENIED.

## DISCUSSION

I.    <u>The Interest of Justice Does Not Require a New Trial</u>

Rule 33 provides, in relevant part, that a district court may vacate a judgment of conviction and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. A trial court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" <u>United States v. Ferguson</u>, 246 F.3d 129, 134 (2d Cir. 2001) (quoting <u>United</u>

States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).  Put differently, a motion for a new trial should be granted only if the Court has a "real concern that an innocent person may have been convicted."  United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009).  "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice."  United States v. Ferguson, 246 F.3d at 134.  A new trial should not be granted when the Court is "satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict."  Id. (internal quotation marks omitted).

The Court is satisfied that the evidence supporting the jury's verdict was not only competent, satisfactory, and sufficient, but also compelling.  The evidence established that Brown, along with co-conspirators Jason Parris and Demetrice Young, robbed the KeyBank on February 9, 2018, and that Brown knowingly participated in the robbery by acting as the getaway driver.  Indeed, there is no dispute that Brown drove Parris and Young to and from the bank robbery in her car.  That fact alone is enough to adequately support the jury's verdict.

Additional evidence supported Brown's involvement in and knowledge of the robbery, including surveillance videos, testimony from law enforcement officers, and cell phone records. Brown dropped Parris and Young off, not at the bank but on a residential street near the bank, out of range of the bank's surveillance cameras.  This was shortly after Brown stopped the car at a gas station across the street from the bank, from which the bank could more easily be surveilled, and after she had driven the car past the bank and along several blocks of a nearby residential neighborhood.  After Brown dropped them off, Parris and Young were dressed in all-black clothing and wore hoods.  Brown waited in the car until Parris and Young returned, at a run, with Parris carrying bundles of cash stolen from the bank in his hands.  At the car, Parris changed out of his all-black clothing and placed the cash in a bag, which officers later found on

the floor in the front passenger seat of the vehicle, within arm's reach of Brown.  Because a

bundle of cash contained a hidden GPS tracking device, the police located Brown's car only

minutes after the robbery.  When a police officer attempted to stop Brown's car using his lights

and sirens, Brown did not come to a complete stop; instead, she tried to pull back into traffic.

After the police successfully stopped the car, officers found the robbers, the cash, the bank's

GPS tracking device, the gun used in the robbery, and discarded black clothes in the car's

passenger compartment and trunk, some of which was at Parris's feet by the front passenger seat.

Evidence amply supported Brown's advance knowledge of and participation in the

planning of the robbery.  First, the jury could fairly infer that because Brown dropped the robbers

off on a side street before the robbery, then drove away with them immediately after the robbery,

she had advance knowledge of the plans for the robbery.  Also, Brown and Parris were in a long-

term romantic relationship, and cell phone records showed that they regularly spoke on the

telephone, including frequent calls in the days and weeks before the robbery, and on the day of

the robbery.  Telephone records also showed that Brown called Young on his cell phone only

once—two days before the robbery.  Further, cell site evidence showed Brown's and Parris's

phones were in the vicinity of Brown's apartment on the day of the robbery.

Moreover, Brown testified in her own defense, and her testimony was simply not

credible.  She claimed she did not know about the bank robbery either before or after it occurred.

However, she did admit that a few weeks before the bank robbery, she heard Parris and Young

talk "about money and coming upon money."  (Feb. 28, 2019 Tr. at 439).  Brown also testified

that she drove Parris and Young around on the day of the robbery, but that Parris did not tell her

where they were going and told her to follow driving directions on his cell phone.  She testified

that when Parris and Young returned to the car, they changed out of their black clothes—Parris

took off his black pants which covered other colored pants, and Young put on a pink sweater.

Brown then admitted she heard Parris or Young say, "that was too easy." (Id. at 466). She also

testified that when she was later interrogated by the police, she lied about what she had been

doing that day and whether she knew her boyfriend Parris's last name. Brown's answers during

both direct and cross-examination were contradictory and evasive, and her overall testimony was

implausible and simply not believable.

Having carefully considered the trial record as whole, the Court has no "concern that an

innocent person may have been convicted" in this case. United States v. McCourty, 562 F.3d at

475.

II.     The Court Did Not Improperly Deny a Hearing

Brown argues a new trial is required because the Court improperly denied her request for

an evidentiary hearing on the voluntariness of her post-arrest statements at the time of the pre-

trial motions, and as a result, she was unable to present relevant expert testimony and "challenge

fully and effectively the government's use of her statement." (Brown Br. at 11).

The Court disagrees.[1]

On July 9, 2018, Brown moved to suppress her post-arrest statements, in part, because

they were involuntary. In response, the government stated it did not intend to offer Brown's

post-arrest statements in its direct case. The Court denied the motion to suppress as moot on

---

[1]     On reply, Brown also appears to argue the expert testimony is newly discovered evidence because neither she nor her counsel knew of the extent of her cognitive deficiency. (Brown Reply at 3–4). However, this evidence is not newly discovered evidence, because as her counsel admits, he would have engaged an expert at an evidentiary hearing, and therefore, this evidence could have been discovered before or during trial with due diligence. See United States v. Owen, 500 F.3d 83, 87 (2d Cir. 2007) (newly discovered evidence warrants a new trial "only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal.").

October 22, 2018.  Brown did not seek further ruling on or review of the voluntariness issue until

the final pre-trial conference on February 19, 2019, when her counsel maintained the government

could not use her coerced and involuntary statements to cross-examine her if she testified at trial.

In a letter dated February 22, 2019, Brown reiterated these arguments but did not request an

evidentiary hearing or note that she wished to call an expert witness on the voluntariness issue.

(Doc. #66).  By letter dated February 23, 2019, the government argued Brown's statements were

voluntary as shown in the video recording of the post-arrest interview.  (Doc. #67).

On February 25, 2019, the Court heard further argument on the voluntariness issue before

jury selection.  The government stated the video recording and its transcript provided the

necessary background and that the government would offer no further evidence or witnesses.

(Feb. 25, 2019 Tr. at 5).  When asked what evidence Brown would present at a hearing if one

were held, her counsel said he "was not calling any witnesses."  (Id. at 6).  Defense counsel

noted that he "had hoped to have an opportunity have an expert review the tape for opinion on

voluntariness and false confession" (id. at 8), but he did not intend to call Brown or any other

witness to testify in support of the suppression motion (id. at 12–13).  Defense counsel then

confirmed that the record on the motion was complete.  (Id. at 13).  The following day, having

reviewed the entire video recording and transcript of Brown's post-arrest interview, as well as

Brown's affidavit in support of the motion and all other papers in support of and in opposition to

this motion, the Court denied the motion in an oral ruling, finding that Brown's statements were

made voluntarily because "[t]he interrogation, considered in totality, does not demonstrate police

coercion."  (Feb. 26, 2019 Tr. at 5–6, 13).

The Court did not improperly deny an evidentiary hearing.  While defense counsel argues

the Court should have granted an evidentiary hearing on voluntariness when pre-trial motions

were filed in July 2018, defense counsel neglects to mention that after the Court denied the

motion as moot in October 2018, neither he nor the government sought a further ruling on or

review of the voluntariness issue until the final pre-trial conference on February 19, 2019. (Feb.

19, 2019, Tr. at 10). In fact, defense counsel admits he "realized" the motion was not moot as

trial approached. (DeVita Reply Aff. ¶ 4). Generally, a suppression hearing is only required "if

the moving papers are sufficiently definite, specific, detailed, and nonconjectural." See United

States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). After the motions were filed in July and

decided in October, defense counsel did not point to (and certainly did not submit "definite,

specific, detailed, and nonconjectural" motion papers) which notified the Court he believed a

hearing was required.

More importantly, the record clearly reflects that neither the government nor Brown

intended to introduce any evidence on the motion that was not already in the record. Both

counsel confirmed the record on the motion to suppress was complete. The Court asked Brown's

counsel at least three times whether Brown intended to offer her testimony or any other witness's

testimony in support of the motion to suppress. Each time, defense counsel said no.

Brown's argument that at that point it was "too late" to produce expert testimony on the

voluntariness issue is unpersuasive. (Brown Br. at 12; Brown Reply at 5). Brown first raised the

issue of voluntariness seven months earlier in her July 2018 pretrial motions and again at a status

conference four months earlier in October 2018. In any event, Brown could have sought a

continuance to allow her to obtain additional testimony. She did not.

Accordingly, the Court did not improperly deny a pre-trial hearing.

III.     Dr. Drob's Proposed Testimony Would Not Have Altered the Court's Ruling on Voluntariness

To demonstrate her post-arrest statements were coerced and involuntary, Brown offers the expert report of forensic psychologist Sanford Drob, Ph.D, procured nearly two months <u>after</u> the trial was over.  Dr. Drob opined that the results of Brown's psychological testing "cast[] . . . doubt on the voluntariness of her [post-arrest] statement" (Doc. #84-2 ("Drob Report") at 12), because Brown "has specific psychological vulnerabilities that would make her vulnerable to manipulation and pressure both to speak to the detectives at all and to comport her statement to their implicit and explicit suggestions and demands" (<u>id</u>. at 11).  These vulnerabilities supposedly included a tendency to be "passive, acquiescent and deferential to others."  (<u>Id</u>.).

Even if the Court had considered the information in Dr. Drob's report (or his testimony, assuming it was consistent with the report), that information and testimony would not have changed the Court's ruling that Brown's statements were voluntary.  Put simply, the interrogation, considered in its totality, did not demonstrate police coercion.  The video recording of the interview demonstrates (and Dr. Drob concedes) that Brown was read and understood her <u>Miranda</u> rights.  At no time during the interrogation did Brown seek to terminate the conversation, nor did she ever ask to speak to a lawyer.  She was not handcuffed or restrained in any way.  She was given coffee and water, and she was able to use the bathroom multiple times when she asked to do so.  At no time did the officers physically threaten or berate her.  The three examples of alleged coercion that Brown cited in her motion to suppress did not change the Court's conclusion.  (Feb. 26, 2019 Tr. at 6-13).  Dr. Drob's opinion that Brown was a generally passive and acquiescent individual who may have been susceptible to manipulation does not demonstrate there was, in fact, manipulation; it simply assumes there was.

Moreover, Dr. Drob fails to take into account that Brown steadfastly maintained her innocence throughout the three-hour interrogation. Brown repeatedly denied she was involved with a robbery. While Brown contradicted herself and made some potentially damaging statements, she never made any outright admission of guilt. Therefore, the Court is convinced that any contradictory and potentially damaging statements much more likely resulted from Brown's attempt to deceive the investigators, rather than from her supposedly deferential personality. The video recording and the transcript of the interview clearly shows Brown did not acquiesce to her interrogators.

Accordingly, had the Court considered Dr. Drob's proposed expert testimony, that testimony would not have changed the Court's finding that Brown's statements were knowingly and voluntarily made and not coerced in any way.

IV.     Precluding Use of the Post-Arrest Statements in Brown's Cross-Examination Would Not Have Altered the Jury's Verdict

Finally, it is highly unlikely the jury would have reached a different verdict had Brown's post-arrest statements been suppressed. Even apart from Brown's testimony concerning her post-arrest statements, the inculpatory evidence described above convincingly established Brown's guilt. Considering the trial record as a whole, letting the guilty verdict stand would not constitute a manifest injustice. See United States v. Ferguson, 246 F.3d at 134.

**CONCLUSION**

The motion for a new trial is DENIED.

Sentencing will proceed as scheduled on June 27, 2019, at 12:00 p.m. Defendant's

sentencing submission is due no later than June 17, 2019. The government's submission is due

June 21, 2019.

The Clerk is instructed to terminate the motion (Docs. ##81, 82) and the remaining open

motions on the docket (Docs. ##19, 23, 26, 29, 56, 66, 68, 69, 70).

Dated: June 6, 2019
      White Plains, NY

                           SO ORDERED:

                           Vincent L. Briccetti
                           United States District Judge